TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-98-00249-CV







Joe Woods and Leeann Woods, Appellants




v.




Taylor Housing Authority, Appellee







FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 277TH JUDICIAL DISTRICT


NO. 96-329-C277, HONORABLE JOHN R. CARTER, JUDGE PRESIDING 







 Appellants Joe and Leeann Woods sued Taylor Housing Authority ("the Housing
Authority") for personal injuries sustained by Joe Woods. The trial court granted summary
judgment for the Housing Authority. On appeal, the Woodses contend the trial court erred in
concluding as a matter of law that they failed to properly notify their landlord that a condition in
their apartment needed repair. We will affirm.

 The Woodses sued the Housing Authority for personal injuries Joe Woods received
after an air conditioning vent cover fell from the ceiling of his apartment, striking him in the head. 
The Housing Authority is the governmental housing authority that owns the apartment complex. 
The Woodses alleged that the Housing Authority was negligent in failing to repair the air
conditioner, warn its tenants of the danger of the falling vent, and train its maintenance staff to
properly repair the air conditioner, and in allowing water to build up on the ceiling in the first
place.

 In its motion for summary judgment, the Housing Authority asserted, first, that it
had complied with all of its obligations as landlord under the terms of the lease and under the
Texas Property Code and, second, that the Woodses' claims were barred by sovereign immunity. 
Specifically, the Housing Authority claimed the Woodses failed to comply with the written notice
requirements found in the lease. Because Leeann gave only oral notice of the defect, the Housing
Authority argued it had no duty to repair the vent cover and therefore did not violate its
obligations under the lease or the Property Code. The Housing Authority also claimed the
Woodses' negligence claims were barred by sovereign immunity because a housing authority is
a governmental unit. The trial court's order granting summary judgment did not specify the
ground or grounds on which it was based.

 The standards for reviewing a motion for summary judgment are well established: 
(1) The movant for summary judgment has the burden of showing that no genuine issue of material
fact exists and that he is entitled to judgment as a matter of law; (2) in deciding whether there is
a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant
will be taken as true; and (3) every reasonable inference must be indulged in favor of the
nonmovant and any doubts resolved in its favor. Nixon v. Mr. Property Management Co., 690
S.W.2d 546, 548-49 (Tex. 1985). When a court grants summary judgment in a general order,
without specifying the ground or grounds on which it is based, the appeals court must affirm the
judgment if it is supported by any of the legal grounds presented in the movant's motion for
summary judgment. See State Farm Fire & Cas. Co. v. S.S., 858 S.W.2d 374, 380 (Tex. 1993). 
We will therefore uphold the summary judgment if any one of the grounds urged in the Housing
Authority's motion for summary judgment is meritorious.

 Under common law, a landlord had no duty to repair leased premises or keep them
safe. See Garza-Vale v. Kwiecien, 796 S.W.2d 500, 502 (Tex. App.--San Antonio 1990, writ
denied). With a few exceptions, this rule precluded landlord liability even for personal injury to
a tenant resulting from a dangerous condition that existed when the lessee took possession of the
premises. See Flynn v. Pan Am. Hotel Co., 183 S.W.2d 446, 447-48 (Tex. 1944); Restatement
(Second) of Torts §§ 356-62 (1965). In 1978, the Texas Supreme Court recognized an implied
warranty of habitability in residential leases. See Kamarath v. Bennett, 568 S.W.2d 658, 660-61
(Tex. 1978). The following year, in response to Kamarath, the legislature enacted a statute that
both created a limited landlord's duty to repair and abrogated the Kamarath implied warranty. 
See Act of May 28, 1979, 66th Leg., R.S., ch. 780, §§ 1-18, 1979 Tex. Gen. Laws 1978 (Tex.
Rev. Civ. Stat. Ann. art. 5236f, since repealed and codified at Tex. Prop. Code Ann. §§ 92.001-.061). Part of the 1979 legislation imposes on landlords a limited duty to repair, if the following
conditions are met:


(1) the tenant specifies the condition in a notice to the person to whom or to the
place where rent is normally paid;


(2) the tenant is not delinquent in the payment of rent at the time notice is given;
and


(3) the condition materially affects the physical health or safety of an ordinary
tenant.



Tex. Prop. Code Ann. § 92.052(a) (West 1995) (emphasis added). Thus, in the absence of proper
notice, a landlord has no duty to repair and no liability for a tenant's personal injuries. With
respect to the requirement of notice by the tenant, subsection (d) of section 92.052 provides that
"[t]he tenant's notice under Subsection (a) must be in writing only if the tenant's lease is in writing
and requires written notice." Prop. Code § 92.052(d).

 In the present case, the Woodses' lease was in writing and provided that "[a]ll
notices and requests for repairs or services by any resident or occupant (including security-related
matters), must be in writing to owner's designated representative." Accordingly, for the Housing
Authority to have had any duty to repair the air conditioning vent cover in question, the Woodses
were obligated to give written notice of the problem.

 In their first point of error, the Woodses contend the court erred in granting
summary judgment because they gave the landlord proper written notice of the defective vent
cover. The undisputed summary judgment evidence showed that the Woodses did not give the
Housing Authority a written notice of the state of the vent cover; rather, they orally told an
apartment employee about the defect and watched that employee write down their complaint on
some sort of repair order form. The Woodses contend this constituted written notice, thereby
triggering the Housing Authority's duty to repair. We disagree.

 Oral statements communicating a defect are not "written notice." Even if we
indulge all inferences in favor of the Woodses, it is clear that an oral report that is later written
down by a representative of the landlord is not proper "written notice" as contemplated by the
lease or under the Property Code. See Prop. Code § 92.052(d). Moreover, the summary
judgment record indicates that the Woodses knew and understood what proper written notice
means. When they moved out, the Woodses notified their landlord with a letter, presumably
because they were complying with the lease provision that requires written notice before vacating
their apartment. Because the Woodses did not provide proper written notice of the defect, the
Housing Authority cannot be held liable for failing to repair the defect under the lease contract or
under the Property Code. See Garza-Vale, 796 S.W.2d at 503.

 A case relied on by the Woodses, Moreno v. Brittany Square Associates, 899
S.W.2d 261 (Tex. App.--Houston [14th Dist.] 1995, writ denied), is distinguishable. Unlike the
Woodses, the plaintiff in Moreno alleged a cause of action under one of the common-law
exceptions to the general common law rule that a landlord is not liable for personal injury to a
tenant resulting from a dangerous condition that existed when the lessee took possession. See
Restatement (Second) of Torts § 358 (1965). Because the plaintiff had not alleged a violation of
the statutory duty to repair, the court held that she was not obligated to satisfy the statutory notice
requirement. See Moreno, 899 S.W.2d at 262-63.

 Point of error number one is overruled.

 In light of our resolution of point of error one, we need not reach the Woodses'
remaining points of error.

 We affirm the trial court's summary judgment.



 

 J. Woodfin Jones, Justice

Before Justices Jones, B. A. Smith and Yeakel

Affirmed

Filed: May 13, 1999

Do Not Publish



nized an implied
warranty of habitability in residential leases. See Kamarath v. Bennett, 568 S.W.2d 658, 660-61
(Tex. 1978). The following year, in response to Kamarath, the legislature enacted a statute that
both created a limited landlord's duty to repair and abrogated the Kamarath implied warranty. 
See Act of May 28, 1979, 66th Leg., R.S., ch. 780, §§ 1-18, 1979 Tex. Gen. Laws 1978 (Tex.
Rev. Civ. Stat. Ann. art. 5236f, since repealed and codified at Tex. Prop. Code Ann. §§ 92.001-.061). Part of the 1979 legislation imposes on landlords a limited duty to repair, if the following
conditions are met:


(1) the tenant specifies the condition in a notice to the person to whom or to the
place where rent is normally paid;


(2) the tenant is not delinquent in the payment of rent at the time notice is given;
and


(3) the condition materially affects the physical health or safety of an ordinary
tenant.



Tex. Prop. Code Ann. § 92.052(a) (West 1995) (emphasis added). Thus, in the absence of proper
notice, a landlord has no duty to repair and no liability for a tenant's personal injuries. With
respect to the requirement of notice by the tenant, subsection (d) of section 92.052 provides that
"[t]he tenant's notice under Subsection (a) must be in writing only if the tenant's lease is in writing
and requires written notice." Prop. Code § 92.052(d).

 In the present case, the Woodses' lease was in writing and provided that "[a]ll
notices and requests for repairs or services by any resident or occupant (including security-related
matters), must be in writing to owner's designated representative." Accordingly, for the Housing
Authority to have had any duty to repair the air conditioning vent cover in question, the Woodses
were obligated to give written notice of the problem.

 In their first point of error, the Woodses contend the court erred in granting
summary judgment because they gave the landlord proper written notice of the defective vent
cover. The undisputed summary judgment evidence showed that the Woodses did not give the
Housing Authority a written notice of the state of the vent cover; rather, they orally told an
apartment employee about the defect and watched that employee write down their complaint on
some sort of repair order form. The Woodses contend this constituted written notice, thereby
triggering the Housing Authority's duty to repair. We disagree.

 Oral statements communicating a defect are not "written notice." Even if we
indulge all inferences in favor of the Woodses, it is clear that an oral report that is later written
down by a representative of the landlord is not proper "written notice" as contemplated by the
lease or under the Property Code. See Prop. Code § 92.052(d). Moreover, the summary
judgment record indicates that the Woodses knew and understood what proper written notice
means. When they moved out, the Woodses notified their landlord with a letter, presumably
because they were complying with the lease provision that requires written notice before vacating
their apartment. Because the Woodses did not provide proper written notice of the defect, the
Housing Authority cannot be held liable for failing to repair the defect under the lease contract or
under the Property Code. See Garza-Vale, 796 S.W.2d at 503.

 A case relied on by the Woodses, Moreno v. Brittany Square Associates, 899
S.W.2d 261 (Tex. App.--Houston [14th Dist.] 1995, writ denied), is distinguishable. Unlike the
Woodses, the plaintiff in Moreno alleged a cause of action under one of the common-law
exceptions to the general common law rule that a landlord is not liable for personal injury to a
tenant resulting from a dangerous condition that existed when the lessee took possession. See
Restatement (Second) of Torts § 358 (1965). Because the plaintiff had not alleged a violation of
the statutory duty to repair, the court held that she was not obligated to satisfy the statutory notice
requirement. See Moreno, 899 S.W.2d at 262-63.

 Point of error number one is overruled.

 In light of our resolution of point of error one, we need not reach the Woodses'
remaining points of error.

 We affirm the trial court's summary judgment.



 

 J. Woodfin Jones, Justice

Before Justices Jones, B. A. Smith and Yeakel

Affirm